**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PUREPECHA ENTERPRISES INC., an Illinois Corporation, d/b/a EL MATADOR, <br><br> Plaintiff, <br><br> v. <br><br> EL MATADOR SPICES & DRY CHILES, a California Corporation, EL MATADOR ADOBOS, L.L.C., a Texas limited liability company, CARLOS RICO, JAIME PABLO RICO, DARIO RICO, ROGELIO RICO, ARTURO OROZCO, RUBEN OROZCO, and ISRAEL GONZALES FERNANDEZ, <br><br> Defendants. <br> EL MATADOR ADOBOS, L.L.C. and CARLOS RICO, <br><br> Counter-Plaintiffs, <br><br> v. <br><br> PUREPECHA ENTERPRISES, INC., EVERARDO MEJIA, and PETRA ANGELICA RICO, <br><br> Counter-Defendants. | Case No. 1:11-cv-2569 <br><br> Judge Amy J. St. Eve <br><br> Magistrate Judge Young B. Kim |

**DEFENDANTS/COUNTER-PLAINTIFFS'
MOTION TO STRIKE THE DECLARATIONS OF
PETRA ANGELICA RICO, RAFAEL RICO, AND JOSE DOMINGUEZ**

Defendants El Matador Adobos, LLC, Arturo Orozco, Ruben Orozco, Carlos Rico, Jaime Pablo Rico, and Rogelio Rico, and Counter-Plaintiffs El Matador Adobos, LLC and Carlos Rico (collectively "Movants"), pursuant to Federal Rules of Civil Procedure 37 and 56 and the Court's inherent authority, respectfully request that the Court strike the Declarations of Petra Angelica Rico (ECF No. 88-2), Rafael Rico (ECF No. 88-4), and Jose Dominguez (ECF No. 88-10) (collectively, "Declarations"), as well as any portion of the record citing to these Declarations.

- 1 -

**I.   INTRODUCTION**

Months after the close of fact discovery, Plaintiff/Counter-Defendants submitted three Declarations in an attempt to create issues of fact and ward off summary judgment. Numerous failures permeate the Declarations. In particular:

- the Declarations contradict prior sworn statements;
- the Declarations are conclusory and not based on personal knowledge;
- the Declarations contain inadmissible hearsay;
- the Declarations lack proper authentication of testimony translated from Spanish; and
- the Declarations offer information that Plaintiff/Counter-Defendants failed to disclose during fact discovery.

Movants therefore request that the Court strike the Declarations and any part of the record citing to them.

**II.   ARGUMENT**

**A.   THE RAFAEL RICO DECLARATION CONTRADICTS HIS PRIOR SWORN STATEMENTS.**

The "sham affidavit" rule prohibits litigants from creating sham issues of fact with affidavits that contradict prior sworn statements. *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169 (7th Cir. 1996). "'If such contradictions were permitted . . . the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut.'" *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005) (quoting *Bank of Illinois*, 75 F.3d at 1168–69).

Indeed, it is well-settled that "[a]ffidavits, though signed under oath by the affiant, are typically . . . written by the affiant's lawyer, and when offered to contradict the affiant's [sworn] statement] are so lacking in credibility as to be entitled to zero weight in summary judgment

proceedings unless the affiant gives a plausible explanation for the discrepancy." *Beckel v. Wal-Mart Assocs, Inc.*, 301 F.3d 621, 623 (7th Cir. 2002). And these "sham" issues are especially troublesome where, as here, the "deposition is the time for the plaintiff to make a record capable of surviving summary judgment—not a later filed affidavit." *Cowan v. Prudential Ins. Co. of Am.*, 141 F.3d 751, 756 (7th Cir. 1998).

Rafael Rico's declaration contradicts his sworn deposition testimony (with each and every discrepancy supporting only Plaintiff/Counter-Defendants' theory of the case):

| Rafael Rico's Sworn Deposition Testimony | Rafael Rico's Declaration |
|---|---|
| Q. Do you know if Carlos ever wrote the name Matador on the bucket?<br>A. I don't remember.[1] | To the best of my knowledge, our buckets never had the words "El Matador" written or printed on them during my years living in California.[2] |
| Q. Do you know if Carlos ever wrote the name Matador on the bucket?<br>A. I don't remember.[3]<br>. . . .<br>Q. Do you know if any of Carlos' customers paid in checks?<br>A. I don't know.[4] | The name "El Matador" and the Bullfighter Logo did not appear on any other materials used with respect to our adobo business.[5] |
| Q. So were you and Carlos selling separately?<br>A. Yes.[6] | Carlos and I worked together, without formal roles, to do everything that needed to be done for that business.[7] |

---

[1] (Dep. Rafael Rico, Nov. 16, 2011, 135:10–12, filed at ECF No. 78-5.)

[2] (Decl. Rafael Rico 3, at ¶ 7.)

[3] (Dep. Rafael Rico 135:10–12.)

[4] (*Id.* at 136:9–11.) As Rafael Rico did not know "if any of Carlos' customers paid in checks," it would be impossible for him to know and testify whether the EL MATADOR name and the bullfighter logo did not appear on "any other materials," including checks made payable to "EL MATADOR." This is clearly a "sham" attempt to contradict the record, despite the admitted lack of personal knowledge, because Carlos Rico in fact received checks payable to "EL MATADOR." (*See* Defs./Ctr-Pls.' 56.1(a)(3) Stmt. ¶¶ 22–23.)

[5] (Decl. Rafael Rico 3, at ¶ 9.)

[6] (Dep. Rafael Rico 44:17–19.)

[7] (Decl. Rafael Rico 2, at ¶ 4.)

| | |
|---|---|
| Q. Do you remember an exact date or a more accurate date when you moved to California?<br>A. '95, '96.[8] | In 1995, I moved from Mexico to California.[9] |

Under the sham affidavit rule, Mr. Rico "cannot claim a lack of general knowledge about a subject and later make a statement which requires detailed knowledge about the same subject." *Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1210 (7th Cir. 1993). After admitting specifically what he does not remember and does not know, his later statements are "at least highly unlikely considering the earlier revelations concerning a lack of recall." *Id.* Faced with Mr. Rico's declaration, the Court is now "left only with his own statement based on a vague and somewhat conflicting recollection. This does not create a genuine issue of material fact." *Unterreiner*, 8 F.3d at 1210; *accord United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 466–67 (7th Cir. 2005) (Plaintiff "can not conjure a triable factual issue on the basis of [affiant's] newfound and convenient respect for the truth, particularly when this 'truth' is unsupported by any evidence other than [his] say-so."). Because Mr. Rico's declaration contradicts or is inconsistent with his prior sworn statements, the declaration and any portion of the record citing it should be stricken.

    **B.   THE DECLARATIONS ARE CONCLUSORY AND NOT BASED ON PERSONAL KNOWLEDGE.**

Second, the Declarations should be stricken because there is no foundation for their conclusory statements and statements not based on personal knowledge. *See* Fed. R. Civ. P. 56(c)(4). Rule 56(c)(4) requires that any "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.*

---

[8] (Dep. Rafael Rico 13:18–20.)
[9] (Decl. Rafael Rico 2, at ¶ 3.)

As the Seventh Circuit has held, "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (quoting *Hadley v. County of DuPage*, 715 F.2d 1238, 1243 (7th Cir. 1983)) (affirming the district court's decision to strike all conclusory statements in affidavit from summary judgment record). Accordingly, vague or conclusory statements in a summary judgment affidavit are insufficient. *See Box v. A&P Tea Co.*, 772 F.2d 1372, 1378–79 (7th Cir. 1985) ("conclusory statements and bare assertions of the general truth of a particular matter will not suffice to withstand a properly supported motion for summary judgment" (internal quotations and citations omitted)); *AKW Const. & Envtl. Servs., Inc. v. Galioto*, No. 98-cv-7104, 2000 WL 1809976, at *1 (N.D. Ill. Dec. 11, 2000) ("Statements that result from speculation or conjecture, or that are conclusory, likewise do not satisfy Rule 56(e), and a court should not consider them").

Without question, "the party offering a statement" bears the "burden to establish a foundation for the statement's admissibility." *See Waugaman v. Univ. of Chicago Hosp.*, No. 00 C2581, 2002 WL 472278, at *1, 7 (N.D. Ill. Mar. 28, 2002). That foundation requires the "who, what, when or where" of any factual statement. *See Rapid Test Prods., Inc. v. Durham Sch. Servs.*, No. 03-cv-2431, 2009 WL 331479, at *3 (N.D. Ill. Feb. 10, 2009) (finding affidavit inadmissible to oppose summary judgment). The Seventh Circuit and this District have consistently and rigorously applied these foundation requirements. *Abioye v. Sundstrand*, 164 F.3d 364, 368 (7th Cir. 1998) ("conjecture or speculation . . . cannot be used to defeat a summary judgment motion; affidavits must be based on personal knowledge"); *Palucki v. Sears, Roebuck*

*& Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989) ("A party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture.").

### 1. THE RAFAEL RICO DECLARATION.

Based on these principles, Mr. Rico's Declaration should be stricken because it is littered with conclusory statements and statements that are not based on his personal knowledge:

- "The El Matador butcher shop in California **used** a logo of a man holding a red cape." (Decl. Rafael Rico 2, at ¶ 3.)

- "I was involved in the adobo business **from the beginning**, and Carlos and I worked together, without formal roles, to do **everything that needed to be done** for that business." (*Id.* 2, at ¶ 5.)

- "We **would** make personal trips to seek out businesses that might want to buy the adobo to make their own chorizo and meats." (*Id.* 6, at ¶ 6.)

- "Sometimes we **would** write a general term like 'adobo' or 'aderezo' or 'adobo for chorizo' in marker on the buckets." (*Id.* 3, at ¶ 7.)

- "**To the best of my knowledge**, our buckets never had the words 'El Matador' written or printed on them during my years living in California." (*Id.*)

- "We **would** use standard blank invoice forms." (*Id.* 3, at ¶ 8.)

- "Carlos **did the same** on his invoices." (*Id.*)

- "The name 'El Matador' and the Bullfighter Logo did not appear on **any other materials used** with respect to our adobo business." (*Id.* 3, at ¶ 9.)

- "I do not **believe** that I need Carlos' permission to use that name or logo." (*Id.* 4, at ¶ 14.)

- "[M]y brothers had an argument that **was not related to** the adobo production business." (*Id.* 4, at ¶ 17.)

None of these statements demonstrates "personal knowledge" or "set[s] out facts." Fed. R. Civ. P. 56(c)(4). Most significantly, unless Rafael Rico is willing to swear on personal knowledge that he never left the side of Carlos year after year, he certainly could not, and should not, testify what "never" occurred or what "did not appear on any other materials." (Decl. Rafael

- 6 -

Rico 3, at ¶¶ 7, 9.) Indeed, Rafael Rico cannot so swear because, before he ever came to the United States in 1995 or 1996, Carlos was already living and working in California. (Dep. Rafael Rico 121:3–9.) Thus, Rafael Rico's conclusory statement that he "was involved in the adobo business from the beginning" fails likewise for lack of personal knowledge. (Decl. Rafael Rico 3, at ¶ 5.)

And directly contrary to the Seventh Circuit's mandate, Mr. Rico's declaration also fails to provide "specific concrete facts" for his sworn statements. *Drake*, 134 F.3d at 887. Indeed, Mr. Rico's statements reveal the difference between specific concrete facts from within and outside his personal knowledge. Mr. Rico's declaration was artfully — yet nonetheless inadequately — drafted without any "I" statement about matters at issue, for instance, distinguishing what "I never wrote" and what "we would write." His speculative "would" or "believe" statements are not admissible. *See Rapid Test Prods.*, 2009 WL 331479, at *3–4 (striking statements beginning "it became clear to me" and "it has occurred to me"); *Tel-Lock, Inc. v. Thomson Consumer Elec.*, No. 03-cv-320, 2005 WL 741930, at *5 (N.D. Ill. March 30, 2005) (striking affiant's unsupported "beliefs and understanding"). Because Rafael Rico's declaration is conclusory and not based on personal knowledge, the declaration and any portion of the record citing it should be stricken.

### 2. THE PETRA RICO DECLARATION.

The true nature of Petra Rico's declaration is immediately apparent. Ms. Rico testified that she speaks "just a little" English and "no understand 100 percent" English. (Dep. Purepecha Enterprises, Inc. by Petra Angelica Rico Prado, Oct. 20, 2011, 9:19–10:3, filed at ECF No. 78-3.) Her entire Rule 30(b)(6) deposition was translated because she asked that her sworn testimony be provided in Spanish. (*Id.*) Yet, Ms. Rico has now purported to give this five-page Declaration — executed on the very same day as the opposition brief — which in English is "declare[d] upon

penalty of perjury under the laws of the United States that the above statements are, to the best of my knowledge, true and accurate." (Decl. Petra Rico 5.) Every statement, as sworn to in English, is purportedly "based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy." (*Id.* 2, at ¶ 2.)

Even if Ms. Rico could testify as to the truth and accuracy of her new English language declaration, it still contains inadmissible conclusory statements and statements that are not based on her personal knowledge:

- "I **understood and believed** that my brothers were operating that spice mix business under their own personal names and labeling their products, *if at all*, with generic names like 'adobo for chorizo,' which is Spanish for 'spices for chorizo.'" (Decl. Petra Rico 2, at ¶ 4.)

- "For most of the 1990s until it closed in about 1998, my father's butcher shop in Mexico was called 'El Matador' and **used** a logo of a man holding a red cape." (*Id.* 2, at ¶ 7.)

- "The idea for the name 'El Matador' and the Bullfighter Logo **came from** a completely separate butcher shop in California where my brother Carlos worked for a few months in around 1989. My **father liked** this name and logo and adopted them for his butcher shop." (*Id.* 3, at ¶ 8.)

- "Jesus **wanted** to give me those ingredients because **he still felt bad** that Everardo had never been paid for his efforts when he drove a shipment of spices from Jesus in Mexico to Carlos in California back in 1997." (*Id.* 3, at ¶ 11.)

- "In the years after 1999, Everardo and I **built up** our spice mix business in Illinois and the Midwest." (*Id.* 4, at ¶ 12.)

- "Jesus and Carlos **were probably** the first (though not only) siblings of my generation to make chorizo at my father's butcher shop. However, **they simply learned** from my father and grandfather, who were making chorizo long before Jesus and Carlos were born." (*Id.* 4, at ¶ 13.)

These conclusory statements fail to establish any foundation for their admissibility. Ms. Rico offers no "specific concrete facts," let alone facts to establish her personal knowledge. *See Drake*, 134 F.3d at 887. Indeed, her statements leave more questions unanswered than answered.

For instance, it is entirely unclear what makes something "understood and believed" or "built up" or "used." (Decl. Petra Rico 2–3, at ¶¶ 4, 11.) And Ms. Rico's unsupported feelings — whether attributed to herself or projected onto her father, Jesus, Carlos, or anyone else — are not admissible. *See Rapid Test Prods.*, 2009 WL 331479, at *3–4 (striking affiant's statements beginning "it became clear to me" and "it has occurred to me"); *Tel-Lock, Inc.*, 2005 WL 741930, at *5 (striking affiant's unsupported "beliefs and understanding"); *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337 (7th Cir. 1991) (disregarding testimony that "[plaintiff] felt and . . . everybody knew"). Ms. Rico's declaration and any portion of the record citing it should be stricken.

### 3.  THE JOSE DOMINGUEZ DECLARATION.

Mr. Dominguez's declaration should be stricken because it also contains conclusory statements and statements that are not based on his personal knowledge:

- "The **individuals** from this California company **knew** that I usually purchased El Matador products from Purepecha Enterprises." (Decl. Jose Dominguez 2, at ¶ 5.)

- "**They** stated . . . . **They** told me . . . . The fact that **they** said." (*Id.* 2, at ¶¶ 5–6.)

- "For many years before 2009 I had been buying products from Purepecha Enterprises, Inc., the **company owned by Everardo Mejia**." (*Id.* 2, at ¶ 3.)

None of these statements creates a foundation for admissibility. Indeed, Mr. Dominguez's statements about these "individuals" (whoever "they" are) fail on the very first foundational requirement. *See Rapid Test Prods., Inc.*, 2009 WL 331479, at *3 (affidavits must provide the "who, what, when or where" of any factual statement). Likewise, Mr. Dominguez's speculative statement about what unidentified "individuals . . . knew" is not admissible.

*Karazanos*, 948 F.2d at 337 (disregarding testimony that "everybody knew"). For each of these reasons, Mr. Dominguez's declaration and any part of the record relying on it should be stricken.

### C. THE DECLARATIONS CONTAIN INADMISSIBLE HEARSAY.

Third, the Declarations should be stricken because they contain inadmissible hearsay. *See, e.g.*, *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562–64 (7th Cir. 1996) ("a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment" (citing *Wigod v. Chicago Mercantile Exch.*, 981 F.2d 1510, 1518–19 (7th Cir. 1992)); *Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, 739 F. Supp. 2d 1063, 1069 (N.D. Ill. 2010) ("Statements in affidavits premised on hearsay . . . cannot be used to defeat a motion for summary judgment.").

#### 1. THE PETRA RICO DECLARATION.

One of the key statements in Ms. Rico's declaration is textbook hearsay:

- "Instead, I asked to speak to the store supervisor and asked if they bought product from a Texas company called 'El Matador.' The **person I talked to said** that Texas company had left some product samples, and offered to give me those samples if I wanted them." (Decl. Petra Rico 4, at ¶ 15.)

The Court should strike this statement from Ms. Rico's declaration and any part of the record relying on it.

#### 2. THE JOSE DOMINGUEZ DECLARATION.

Similarly, Mr. Dominguez's declaration contains prohibited hearsay to support his statements:

- "**two individuals stating** that they were selling on behalf of a California company called El Matador . . ." (Decl. Jose Dominguez 2, at ¶ 4.)

- "**They stated** that their California company was the 'original' El Matador and the owner of the El Matador name." (*Id.* 2, at ¶ 5.)

- "**They told me** that Everardo Mejia had come to Chicago and copied the El Matador name without permission, after the people from their California company had taught him how to make the marinade spice mix." (*Id.* 2, at ¶ 5.)

- "The fact that **they said** that they were the 'original' El Matador . . . ." (*Id.* 2, at ¶ 6.)

Each statement contains hearsay, depending entirely on what Mr. Dominguez tells us "they" reportedly stated. The Court should therefore strike the declaration and any portion of the record citing it.

### D. THE DECLARATIONS LACK PROPER AUTHENTICATION OF TESTIMONY TRANSLATED FROM SPANISH.

Fourth, the Declarations lack proper authentication. Documentary evidence is admissible only if authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). As a result, "[w]itness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation done by a competent translator." *Trapaga v. Central States Joint Bd. Local 10*, No. 05-cv-5742, 2007 WL 1017855, at *2 (N.D. Ill. Mar. 30, 2007). If the court cannot ascertain whether the affidavit is in fact translated testimony, or whether the translation represents an accurate portrayal of that testimony, the affidavit is properly stricken. *Id.*

#### 1. THE RAFAEL RICO DECLARATION.

Rafael Rico gave his entire deposition in translated Spanish. (*See* Dep. Rafael Rico, Nov. 16, 2011, filed at ECF No. 78-5.) Yet, Mr. Rico has now purported to give a five-page declaration in English that is "declare[d] upon penalty of perjury under the laws of the United States" to be "to the best of [his] knowledge, true and accurate." (Decl. Rafael Rico 5.) In fact, based on the declaration itself, Mr. Rico appears only to have signed and faxed the two signature pages of two versions of his declaration. (*Id.*)

Although Rafael Rico's English-language version may be a translation of his Spanish-language version, it neither contains any translator's verification nor any other indication that Mr. Rico's statements are translated accurately. Alternatively, Mr. Rico may have translated both versions of the declaration, but there is no proof that occurred as well. Equally speculative is whether after testifying entirely in Spanish, each and every statement of Mr. Rico's Declaration, as sworn in English, is "based on [his] personal knowledge" and whether he could "testify as to its truth and accuracy." (*Id.* 1, at ¶ 2.) Such speculation is not an evidentiary foundation. At bottom, Mr. Rico's declaration is not properly authenticated (and likely not based on personal knowledge), and therefore it should be stricken along with any portion of the record relying on the declaration. *See Trapaga*, 2007 WL 1017855, at *2.

### 2. THE JOSE DOMINGUEZ DECLARATION.

Similarly, Jose Dominguez's declaration lacks proper authentication. Here, the unsigned version may be a translation of the Spanish-language version, but it has no translator's verification or other indication that his testimony was accurately translated. (Decl. Jose Dominguez 1–2.) Because the declaration is not properly authenticated, it should be stricken along with any part of the record citing the declaration. *See Trapaga*, 2007 WL 1017855, at *2.

### E. THE DECLARATIONS OFFER INFORMATION THAT PLAINTIFF/COUNTER-DEFENDANTS FAILED TO DISCLOSE DURING FACT DISCOVERY.

Lastly, but equally significant, the Declarations should be stricken because they offer information that Plaintiff/Counter-Defendants failed to disclose during fact discovery. Fed. R. Civ. P. 37(c)(1). "If a party fails to provide information [under Rule 26(e)(1)(A)], the party is not allowed to use that information or witness to supply evidence on a motion." *Id.*

As the Seventh Circuit has interpreted Rule 37(c)(1), "exclusion is thus automatic and mandatory unless the party to be sanctioned can show that its violation . . . was either justified or

harmless." *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996); *accord* Fed. R. Civ. P. 37 adv. comm. notes ("This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at trial, at a hearing or on a motion, such as the one under Rule 56."). Indeed, the fact discovery deadline is an automatic consequence of Rule 37(c)(1). *See Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, No. 95 C 0673, 1996 WL 680243, at *8 (N.D. Ill. Nov. 21, 1996) ("If a party is allowed to withhold the supplementation of its discovery responses until after fact discovery is closed, the purpose of [Rule 26(e)] is effectively frustrated because the opposing party is denied the opportunity to conduct discovery on the supplemented responses.").

        **1.**       **THE PETRA RICO DECLARATION.**

In this case, Movants issued interrogatories directly covering the topics in Petra Rico's declaration. Specifically, Plaintiff/Counter-Defendants were asked: "please identify the date of your alleged first use of each mark, please describe in detail the facts and circumstances of your alleged first use made of each mark, please describe in detail the manner of use of each mark from the date of alleged first use to the present, and please identify all documents supporting those dates of use and alleged first use." (Pl./Ctr-Defs.' Interrog. No. 3, attached as Ex. A.) But rather than disclose the information now offered in Ms. Rico's untimely declaration — especially information about her purported personal involvement in the alleged first use — Plaintiff/Counter-Defendants objected and stated, "Purepecha first used the Matador Color Mark in May of 1999, when **Everardo Mejia** placed labels containing that mark on the buckets of spices **he sold**." (*Compare id. with* Decl. Petra Rico 2–3, at ¶¶ 3–11.) There is no reference to Ms. Rico's personal involvement in the first use; in fact, Plaintiff/Counter-Defendants' sworn answer excludes Ms. Rico.

Furthermore, Plaintiff/Counter-Defendants were asked to "please identify and describe in detail all evidence you are aware of that supports your contentions of first use and ownership of any and all of the Matador Marks." (Pl./Ctr-Defs.' Interrog. No. 7.) Once again, Plaintiff/Counter-Defendants objected and swore, not Ms. Rico but instead, "**Everardo Mejia** was the first party to use the Matador Color Mark in the United States with respect to spices and seasonings." (*Id.*) Here, again, there is no reference to Ms. Rico's personal involvement.

Plaintiff/Counter-Defendants cannot justify their withholding information from Movants in their sworn interrogatory responses, and they should be barred from trying to avoid summary judgment by offering new facts now. The Petra Rico declaration and any part of the record citing it should be stricken.

### 2. THE JOSE DOMINGUEZ DECLARATION.

Movants also issued interrogatories directly covering the topics in Jose Dominguez's declaration, asking Plaintiff/Counter-Defendants to "Please state the basis for your allegations in Count V, Count VI and Count VII of the Complaint, the alleged 'Tortious Interference with a Contract' claims." (Pl./Ctr-Defs.' Interrog. No. 6.) Plaintiff/Counter-Defendants objected and referred to their allegations. (*Compare id. with* Decl. 1–2, ¶¶ 3–6.) Nowhere did Plaintiff/Counter-Defendants identify Jose Dominguez or his discoverable information in their interrogatory answer. (*See* Pl./Ctr-Defs.' Interrog. No. 6.)

As the record already shows, Movants clearly and repeatedly sought any supplemental information during fact discovery. (*See* Defs./Ctr-Pls.' Mot. Compel, ECF No. 61.) Plaintiff/Counter-Defendants' untimely disclosure has deprived Movants of their opportunity to challenge this newly created record. In fact, Plaintiff/Counter-Defendants argued to this Court it was "neither necessary nor equitable" to extend any fact discovery. (Pl./Ctr-Defs.' Mem. 2, ECF No. 59.) After withholding information from sworn interrogatory answers, Plaintiff/Counter-

Defendants may not oppose summary judgment with the very information that they withheld during discovery. Pursuant to Rule 37(c)(1), the Petra Rico declaration and Jose Dominguez declaration, as well as any portion of the record citing to them, should be stricken.

## III. CONCLUSION

For these reasons, Movants respectfully request that the Court strike the Declarations of Petra Angelica Rico (ECF No. 88-2), Rafael Rico (ECF No. 88-4), and Jose Dominguez (ECF No. 88-10), as well as any portion of the record citing to these declarations.

Dated: April 30, 2012                                      Respectfully submitted,

                                                               By: /s/ Brian O. Watson
                                                                    Sailesh K. Patel
                                                                    Thomas P. White
                                                                    Brian O. Watson
                                                                    SCHIFF HARDIN LLP
                                                                    233 S. Wacker Dr. Suite 6600
                                                                    Chicago, Illinois 60606
                                                                    (312) 258-5500
                                                                    (312) 258-5600 (facsimile)

*Counsel for Defendants El Matador Adobos, LLC, Arturo Orozco, Ruben Orozco, Carlos Rico, Jaime Pablo Rico, and Rogelio Rico, and Counter-Plaintiffs El Matador Adobos, LLC and Carlos Rico*

- 16 -

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on April 30, 2012, he filed the foregoing and this Certificate of Service with the Clerk of the Court via the Case Management/Electronic Case Filing (CM/ECF) system, which will provide electronic notice to all counsel of record.

/s/ Brian O. Watson
Brian O. Watson

CH2\11217536.2