**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PUREPECHA ENTERPRISES, INC., an Illinois Corporation, d/b/a EL MATADOR, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| EL MATADOR SPICES & DRY CHILES, a California Corporation, EL MATADOR ADOBOS, LLC, a Texas limited liability company, CARLOS RICO, JAIME PABLO RICO, DARIO RICO, ROGELIO RICO, ARTURO OROZCO, RUBEN OROZCO, and ISRAEL GONZALES FERNANDEZ, | )<br>)<br>)<br>) Case No. 11 C 2569<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |
| EL MATADOR ADOBOS, LLC and CARLOS RICO, | )<br>)<br>) |
| Counter-Plaintiffs, | )<br>) |
| v. | )<br>) |
| PUREPECHA ENTERPRISES, INC., EVERARDO MEJIA, and PETRA ANGELICA RICO, | )<br>)<br>)<br>) |
| Counter-Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On June 20, 2013, the Court granted Plaintiff Purepecha Enterprises, Inc's ("Purepecha") oral motion for default against Defendants El Matador Spices & Dry Chiles, El Matador Adobos, LLC, Carlos Rico, Jaime Rico, Dario Rico, Rogelio Rico, Arturo Orozco, Ruben Orozco, and

Israel Gonzales Fernandez as to Counts I, II, III, IV, and VIII of Purepecha's Complaint and dismissed Defendants'/Counter-Plaintiffs' remaining counterclaims for failure to prosecute. *See* Fed.R.Civ.P. 41(b). Before the Court is Purepecha's motion as to Defendants El Matador Adobos, L.L.C., Carlos Rico, Jaime Pablo Rico, Arturo Orozco, and Ruben Orozco (the "Midwest Defendants") for default judgment and damages pursuant to Federal Rule of Civil Procedure 55(b)(2). Because the Court already entered a default judgment in Purepecha's favor, this Order only addresses Purepecha's damages claims. *See e360 Insight v. The Spamhaus Project,* 500 F.3d 594, 604 (7th Cir. 2007) ("although a default judgment establishes liability, it does not answer whether any particular remedy is appropriate."). For the following reasons, the Court awards Purepecha damages in the amount of $3,200,214. The Court, in its discretion, declines to award treble damages under the Lanham Act, 15 U.S.C. § 1117(b), but awards attorney's fees for Purepecha's Illinois Consumer Fraud Act claim. The Court's permanent injunction ruling is in a separate order.

## BACKGROUND

On April 15, 2011, Purepecha filed an eight-count Complaint alleging trademark claims under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, as well as state law claims against Defendants El Matador Spices & Dry Chiles, El Matador Adobos, LLC, and certain individuals ("Defendants"). On June 30, 2011, Defendants El Matador Adobos, LLC ("El Matador Adobos") and Carlos Rico ("Counter-Plaintiffs") filed a thirty-count Counterclaim against Purepecha Enterprises, Inc., Everardo Mejia, and Petra Angelica Rico ("Counter-Defendants") alleging Lanham Act trademark violations, *see* 15 U.S.C. § 1051, *et seq.*, as well as state law claims. On August 24, 2012, the Court granted in part and denied in part Defendants'/Counter-

Plaintiffs' motion for summary judgment and granted in part and denied in part Plaintiff's/Counter-Defendants' motion for partial summary judgment. The Court presumes familiarity with its August 24, 2012, Memorandum, Opinion, and Order. Purepecha's claims that survived summary judgment include: (1) a Lanham Act trademark infringement claim alleged in Count I; (2) a Lanham Act unfair competition claim as alleged in Count II; (3) a Lanham Act trademark dilution claim as alleged in Count III; (4) an Illinois Uniform Deceptive Trade Practices Act claim in Count IV; and (5) an Illinois Consumer Fraud and Deceptive Business Practices Act claim in Count VIII. Certain counter-claims also survived summary judgment.

Meanwhile, over the past ten months, Defendants/Counter-Plaintiffs have failed — on multiple occasions — to secure counsel and appear at status hearings. The Court warned Defendants/Counter-Plaintiffs numerous times that failure to appear at status hearings could result in a default judgment. On May 30, 2013, the Court set a jury trial for this matter for July 9, 2013. After Purepecha filed a proposed pretrial order on June 10, 2013, the Court held a status hearing on June 13, 2013, at which Defendants/Counter-Plaintiffs failed to appear. In addition, Defendants/Counter-Plaintiffs failed to meet the deadlines for expert discovery and failed to participate in the preparation of the final pretrial order. The Court gave Defendants/Counter-Plaintiffs one last warning that their failure to appear at a June 20, 2013 status hearing would result in default and dismissal of their counterclaims for failure to prosecute. When Defendants/Counter-Plaintiffs did not appear at the June 20, 2013 status hearing, the Court entered Purepecha's oral motion for default and dismissed Defendants/Counter-Plaintiffs' counterclaims for failure to prosecute. On July 1, 2013,

Purepecha filed prove up materials for damages, in which it seeks not only actual damages, but treble damages and attorney's fees.

## ANALYSIS

### I.  Plaintiff's Damages

In the present motion, Purepecha asks the Court to determine its damages for Defendants' Lanham Act violations. As the Seventh Circuit teaches, "[u]pon default, the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Wehrs v. Wells,* 688 F.3d 886, 892 (7th Cir. 2012).

The Lanham Act, specifically 15 U.S.C. § 1117(a), "allows an award of three nonexclusive monetary remedies: (1) recovery of profits; (2) damages sustained by the plaintiff; and (3) costs of the action." *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1347 (7th Cir. 1994). Indeed, Defendants' default as to Purepecha's Lanham Act claims support an award of Defendants' profits. *See* 15 U.S.C. § 1117(a); *WMS Gaming Inc. v. WPC Prods. Ltd.,* 542 F.3d 601, 607-08 (7th Cir. 2008). Section 1117(a) specifically provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id*. As the Seventh Circuit clarifies, "[i]t is enough that the plaintiff proves the infringer's sales. The burden then shifts to the defendant, which must prove its expenses and other deductions from gross sales." *WMS Gaming Inc.,* 542 F.3d at 607–08. In sum, "when a trademark plaintiff offers evidence of infringing sales and the infringer fails to carry its statutory burden to offer evidence of deductions, the plaintiff's entitlement to profits under the Lanham Act is equal to the infringer's gross sales." *Id.* at 608–09.

At issue in this lawsuit is Purepecha's 2008 U.S. Trademark Registration No. 3,436,830 for the mark MATADOR BROTHERS, which is a variation on its core EL MATADOR mark, and its 2011 U.S. Trademark Registration No. 3,942,992 for the mark EL MATADOR and Design, which incorporates the Bullfighter logo. In support of its damages motion, Purepecha points to evidence in the record that the Midwest Defendants were involved in a business effort to sell Defendant El Matador Adobos, L.L.C.'s products under the name and mark El Matador and the Bullfighter logo in Purepecha's existing business territories starting around 2009. Arturo Orozco, for example, testified that he purchased at least two kinds of adobo spice mix from Defendant Carlos Rico and his company El Matador Adobos, L.L.C., which is located in California, and then sold the mixes in the Chicago area along with Defendants Ruben Orozco and Jaime Pablo Rico. (R. 141-1, Ex. A, Arturo Orozco Dep., at 20-25.). Moreover, Arturo Orozco testified at his deposition that Carlos Rico approached him in 2009 about becoming a distributor for El Matador Adobos, L.L.C., and that Carlos Rico traveled to the Chicago area to help set up the distributorship and guide Arturo Orozco and others on how to run the business. (*Id*. at 32-35.) In spring 2009, the Midwest Defendants expanded their distribution business into Tennessee, Indiana, Kentucky, Kansas, Missouri, Wisconsin, and other parts of Illinois where Purepecha was already selling adobo spice products under the El Matador name and mark and Bullfighter logo. (*Id*. at 28-30; R. 141-2, Ex. B, Petra Rico Decl. ¶¶ 6-12.)

Purepecha supports its damages request with its damages expert Benjamin Wilner's declaration and report. (R. 141-3, Ex. C, Wilner Decl. & Report). Wilner, a Director in Grant Thornton LLP's Forensic, Investigative, and Dispute Service's practice area, based his calculations on two general categories of damages allowed by the Lanham Act: (1) Defendants'

unjust gains arising from their activities, and (2) the lost profits Purepecha suffered as a result of having to lower its prices to compete with Defendants' infringing sales. As Wilner explains:

> My calculation of Defendants' unjust gains is based on Defendants' gross sales made in the Midwest states for which Defendants provided information. For 2009 and 2010, I utilized the testimony of Arturo Orozco about Defendants' Midwest gross sales amounts, which were $145,000 and $120,000, respectively. For 2011, Defendants produced a QuickBooks file which showed that Defendants' Midwest sales were $137,032 from June 9, 2011 through the end of the year. Annualizing those sales results in 2011 sales of $242,799. For 2012, Defendants produced a QuickBooks file which showed that Defendants' Midwest sales were $220,734 from the beginning of the year through November 24, 2012. Annualizing the sales results in 2012 sales of $245,558. The sum of the gross sales amounts for the four years is $753,357. I then calculated prejudgment interest as of January 1, 2013 on this amount to be $149,100, for a total of $902,457.

(Wilner Decl. ¶ 5.) As to Purepecha's lost profits, Wilner articulates:

> My calculation of Purepecha's lost profits is based on the price erosion which Purepecha suffered by having to lower its adobo (marinade) price to compete with Defendants' infringing sales starting in 2009. I understand that starting in 2009, Purepecha lowered its per pound price of adobo from $2.50 (where it had been since 1999) to $1.89. At the new lower price, Purepecha actually sold approximately $4,942,000 worth of adobo from 2009 through 2012. I calculated the additional revenue Purepecha would have received had it made those same sales at its previous higher sale price, and adjusted that amount to account for price elasticity (because fewer sales likely would have been made at the higher price) and changes in the U.S. ethnic foods market. These calculations indicated that Purepecha lost profits equal to $1,505,259 due to lowering its adobo price from 2009 through 2012. I then calculated prejudgment interest as of January 1, 2013 on this amount to be $332,327, for a total of $1,837,586.

(*Id*. ¶ 6.) Wilner's calculations are uncontested. Because Wilner's calculations were as of January 1, 2013, he now explains "that the passage of time would cause damages to increase by $460,171 to $3,200,214 in total." (*Id*. ¶ 8.) He explains his calculation as follows:

> This increase is due to two factors. First, my report calculated prejudgment interest as of January 1, 2013. I calculate that the prejudgment interest due as of July 1, 2013 would be $135,305 higher. This is the amount of interest earned on the $2,740,043 in damages calculated in my report utilizing the February 1, 2013 Finance Rate on 24 Month Personal Loans at Commercial Banks as published by

6

> the Federal Reserve Bank of St. Louis. Second, Defendants' unjust gains and Purepecha's lost profits likely continued into 2013. If one assumes that 2013 is mirroring 2012, the Defendants would have $122,779 in unjust gains in the first half of 2013 (half of the Defendants' 2012 sales of $245,558) and Purepecha's lost profits would be $194,351 for that same time period (half of Purepecha's 2012 lost profits of $388,701). I calculate the prejudgment interest on these amounts to be $2,995 and $4,741, respectively.

(*Id.*) Thus, Wilner concludes that Purepcha was damaged in the amount of $3,200,214 as of July 1, 2013. (*Id.* ¶ 9.) Wilner also explains that the gross sales amounts and lost profits amounts relate to different sales, namely, that sales Purepecha lost directly to Defendants are counted in the unjust gains amount and the losses relating to the price change on the sales that Purepecha actually made are included in Purepecha's lost profits. (*Id.* ¶ 7.) Further, Wilner's damages opinions are supported by various publications, reports, and calculations that he attaches to his declaration.

On the other hand, Defendants have not presented any evidence suggesting that deductions to these amounts are warranted or that these amounts are in err. *See WMS Gaming Inc.,* 542 F.3d at 607–08. The Court credits Purepecha's submission and awards $3,200,214 in damages, which includes prejudgment interest.

## II. Treble Damages

Next, Purepecha seeks treble damages pursuant to 15 U.S.C. § 1117(b). The Lanham Act provides that "in assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). In particular, under Section 1117(b), treble damages "must be awarded if an infringer's violation 'consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark,' unless there are

'extenuating circumstances.'" *Zelinski v. Columbia 300, Inc.,* 335 F.3d 633, 642 (7th Cir. 2003) (citation omitted). "Enhancement of an award of damages is clearly committed to the district court." *BASF Corp. v. Old World Trading Co., Inc.,* 41 F.3d 1081, 1096 (7th Cir. 1994); *see also Zelinski,* 335 F.3d at 642.

      Here, Purepecha maintains that Defendants had a scheme to invade its sales territories to sell the exact products under the same name. Allegations in Purepecha's Complaint — which the Court accepts as true due to Defendants' default — and evidence in the record indicate that in 2005 Carlos Rico, Everardo Mejia, Petra Rico, and several other Rico relatives agreed to enter into a business arrangement, the primary goal of which was to have only one entity that would produce spice mixes for distribution throughout the United States. Three years after this business arrangement fell through, Carlos Rico started his business with Arturo Orozco in the Chicago area in reaction to Purepecha selling the same products in Carlos Rico's business territories under the name El Gallo de Oro. (R. 141-1, Ex. D, Carlos Rico Dep., at 140.) Nevertheless, during part of the relevant time period, the parties were challenging the first actual use of the mark in commerce, *see Central Mfg., Inc. v. Brett,* 492 F.3d 876, 881 (7th Cir. 2007), and cancellation proceedings are pending in the Trademark Trial and Appeal Board. *See In the Matter of Registration,* Nos. 3942992; 3436830 (Cancellation No. 92054934). Under these circumstances, the Court cannot conclude that the Midwest Defendants intentionally used the El Matador mark and Bullfighter logo "knowing such mark or designation is a counterfeit mark." *See Zelinski,* 335 F.3d at 642; *see also BASF Corp.,* 41 F.3d at 1096-97. At the very least, there are extenuating circumstances supporting the Court's denial of treble damages. *See Zelinski,* 335

F.3d at 642. Therefore, the Court, in its discretion, declines to award Purepecha treble damages under Section 1117(b).

### III.     Attorney's Fees

Purepecha also seeks attorney's fees under the Lanham Act, the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), and the Illinois Consumer Fraud Act ("ICFA"). The Lanham Act allows for attorney's fees in "exceptional" cases, 15 U.S.C. § 1117(a), in which the acts of infringement are "malicious, fraudulent, deliberate or willful." *BASF,* 41 F.3d at 1099. The Seventh Circuit has concluded that attorney's fees are appropriate if the losing party's "claim or defense was objectively unreasonable — was a claim or defense that a rational litigant would pursue only because it would impose disproportionate costs on his opponent" or "when a party's violation of the Act is especially egregious." *Neuros Co., Ltd. v. KTurbo, Inc.*, 698 F.3d 514, 521 (7th Cir. 2012) (citation omitted). In addition, the IUDTPA provides that "[c]osts or attorneys' fees or both may be assessed against a defendant only if the court finds that he has wilfully engaged in a deceptive trade practice." 815 ILCS 510/3. Based on the facts of the case as discussed above, this is not an "exceptional" case nor did Defendants "wilfully engaged in a deceptive trade practice." *See Neuros Co.,* 698 F.3d at 521; *Tarin v. Pellonari,* 253 Ill.App.3d 542, 553, 625 N.E.2d 739, 747, 192 Ill.Dec. 584, 592 (1st Dist. 1993).

Under the ICFA, however, a plaintiff, as the prevailing party, need not make a threshold showing of bad faith to recover attorney's fees. *See Krautsack v. Anderson,* 223 Ill.2d 541, 559-60, 308 Ill.Dec. 302, 316, 861 N.E.2d 633, 644 (2006); *see also* 815 ILCS 505/10a(c) (the district court "may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party."). Illinois courts look to a number of factors in

determining whether attorney's fees under the ICFA are appropriate, including, but not limited to: "(1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all consumers or businesses or to resolve a significant legal question regarding the Act; and (5) the relative merits of the parties' positions." *Krautsack*, 223 Ill.2d at 554 (citation omitted). The Court has considerable discretion in awarding fees under the ICFA. *See Demitro v. General Motors Acceptance Corp.*, 388 Ill.App.3d 15, 19, 327 Ill.Dec. 777, 782, 902 N.E.2d 1163, 1168 (1st Dist. 2009).

Here, it is undisputed that Defendant Carlos Rico started the Midwest Defendants' distribution business in the Chicago and Midwest region in response to Purepecha selling and marketing adobo spices in California under the name El Gallo de Oro. Meanwhile, although first use was at issue during the relevant time period and cancellation proceedings are still pending in the Trademark Trial and Appeal Board, Defendants/Counter-Plaintiffs failed to secure counsel and attend status hearings for over six months. This failure caused unnecessary delay and a needless increase in the cost of this litigation. Accordingly, the Court, in its discretion, grants Purepecha's request for attorney's fees for its ICFA claim. Purepecha is also entitled to file a bill of costs pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920.

**CONCLUSION**

The Court awards Plaintiff damages in the amount of $3,200,214. The Court, in its discretion, declines to award treble damages under 15 U.S.C. § 1117(b), but awards attorney's fees pursuant to the ICFA.

**Date:** July 8, 2013

                                        **ENTERED**

                                        */s/ Amy J. St. Eve*
                                        **AMY J. ST. EVE**
                                        **United States District Court Judge**